## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

IAN CHAD WEBSTER,

        Petitioner,

vs.                          Case No.:   3:17-cv-904-J-32PDB

SECRETARY, FLORIDA DEPARTMENT
OF CORRECTIONS,

        Respondent.

_____/

## ORDER

### I.   Status

Petitioner, an inmate of the Florida penal system, initiated this case by filing a pro se Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2254. (Doc. 1). He challenges a state court (Duval County, Florida) judgment of conviction and sentence for conspiracy to traffic cocaine, possession of cocaine while armed, and tampering with evidence. Respondent opposes the Petition. (Doc. 15, Response; Doc. 15-1 through Doc. 15-4, Respondent's Exhibits ("Resp. Ex.")). Petitioner has filed a reply brief. (Doc. 21).[1] Thus, the case is ripe for review.

---

[1]    In his reply, Petitioner states that he never received a copy of the Respondent's response. (Doc. 21 at 1, 4). However, one month before he filed the reply brief, the Court granted Petitioner an extension of time to file a reply and instructed the Clerk's office to send him a one-time courtesy copy of the response (Doc. 15) without exhibits. (Doc. 20). The Court's docket (which contains entries viewable only by the Court) reflects that copies were mailed to Petitioner the next day, and that the mail was not returned as undeliverable.

## II.    <u>Procedural Background</u>

This case began in early 2011 when Petitioner was arrested and charged with possession of cocaine while armed ("Case Number 11-743"). (Resp. Ex. A at 21-22).[2] Petitioner pleaded guilty to the offense and received a probationary sentence. (<u>See</u> <u>id.</u> at 52-57). However, he was later charged with committing two more crimes while on probation. First, he was charged with conspiracy to traffic more than 400 grams of cocaine ("Case Number 12-1635"). (<u>Id.</u> at 66). Pursuant to a negotiated plea agreement, Petitioner pleaded guilty to that charge, admitted to violating his probation, and agreed to assist the State in prosecuting other drug offenses. Under the agreement, Petitioner's sentencing range would depend on his level of cooperation and assistance. Then, while working for the police, he was arrested for tampering with evidence ("Case Number 12-4761"). (<u>Id.</u> at 77-79). The State alleged that after Petitioner made a controlled purchase of crack cocaine, video captured him taking a portion of the cocaine for himself. (<u>Id.</u> at 78, 84). Petitioner pleaded guilty to tampering with evidence as well. (<u>Id.</u> at 138-39).

Based on his guilty pleas, the trial court adjudicated Petitioner guilty of each offense charged in Case Numbers 11-743, 12-1635, and 12-4761. The court sentenced Petitioner to 20 years in prison for conspiracy to traffic cocaine. (<u>Id.</u>

---

[2]    Unless otherwise noted, citations to Respondent's exhibits will refer to the Bates-stamp page number on the bottom-center of each page.

at 132-37). The court also revoked Petitioner's probation for possession of cocaine while armed and sentenced him to 15 years in prison for that offense, as well as 5 years in prison for tampering with evidence, all sentences to run concurrently. (Id. at 127-31, 154-47).

Petitioner appealed his sentence to the First District Court of Appeal ("First DCA"). On direct appeal, Petitioner's public defender filed a brief pursuant to Anders v. California, 386 U.S. 738 (1967). (Resp. Ex. C). Petitioner did not file a pro se brief on his behalf. On July 10, 2013, the First DCA per curiam affirmed Petitioner's conviction and sentence. Webster v. State, 116 So. 3d 1269 (Fla. 1st DCA 2013); (Resp. Ex. D).

On January 8, 2014, Petitioner filed a motion for post-conviction relief in the trial court pursuant to Rule 3.850, Florida Rules of Criminal Procedure. (Resp. Ex. F at 1-16). Petitioner filed an Amended Rule 3.850 Motion on August 29, 2016. (Resp. Ex. F at 37-51). Petitioner argued, among other things, that his guilty plea was unknowing and involuntary and that his trial counsel, Charles Truncale, gave ineffective assistance. The trial court denied the Amended Rule 3.850 Motion on October 4, 2016. (Id. at 52-190). Petitioner appealed the denial of the Amended Rule 3.850 Motion to the First DCA, which dismissed the appeal on February 7, 2017 because Petitioner did not file a timely notice of appeal. Webster v. State, 229 So. 3d 1227 (Fla. 1st DCA 2017); (Resp. Exs. G, H). The instant federal habeas petition followed.

### III.   <u>Governing Legal Principles</u>

### A. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal habeas corpus petition. <u>See</u> <u>Ledford v. Warden, Ga. Diagnostic & Classification Prison</u>, 818 F.3d 600, 642 (11th Cir. 2016). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" <u>Id.</u> (quoting <u>Greene v. Fisher</u>, 565 U.S. 34, 38 (2011)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the petitioner's claims on the merits. <u>See</u> <u>Marshall v. Sec'y Fla. Dep't of Corr.</u>, 828 F.3d 1277, 1285 (11th Cir. 2016). The state court need not issue an opinion explaining its rationale for the state court's decision to qualify as an adjudication on the merits. <u>See</u> <u>Harrington v. Richter</u>, 562 U.S. 86, 100 (2011). Where the state court's adjudication on the merits is unaccompanied by an explanation,

> the federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning. But the State may rebut the presumption by showing that the unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision, such as alternative grounds for affirmance that were briefed or argued to the state supreme court or obvious in the record it reviewed.

4

<u>Wilson v. Sellers</u>, 138 S. Ct. 1188, 1192 (2018).

When a state court has adjudicated a petitioner's claims on the merits, a federal court cannot grant habeas relief unless the state court's adjudication of the claim was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(1), (2). A state court's factual findings are "presumed to be correct" unless rebutted "by clear and convincing evidence." <u>Id.</u> § 2254(e)(1).

> AEDPA "imposes a highly deferential standard for evaluating state court rulings" and "demands that state-court decisions be given the benefit of the doubt." <u>Renico v. Lett</u>, 559 U.S. 766, 773 (2010) (internal quotation marks omitted). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." <u>Harrington v. Richter</u>, 562 U.S. 86, 101 (2011) (internal quotation marks omitted). "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." <u>Id.</u> [at 102] (citing <u>Lockyer v. Andrade</u>, 538 U.S. 63, 75 (2003)). The Supreme Court has repeatedly instructed lower federal courts that an unreasonable application of law requires more than mere error or even clear error. <u>See, e.g.</u>, <u>Mitchell v. Esparza</u>, 540 U.S. 12, 18 (2003); <u>Lockyer</u>, 538 U.S. at 75 ("The gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness."); <u>Williams v. Taylor</u>, 529 U.S. 362, 410 (2000) ("[A]n unreasonable application of federal law is different from an incorrect application of federal law.").

Bishop v. Warden, GDCP, 726 F.3d 1243, 1253-54 (11th Cir. 2013) (internal citations modified).

## B. Exhaustion and Procedural Default

There are prerequisites to federal habeas review. Before bringing a § 2254 action in federal court, a petitioner must exhaust all state court remedies that are available for challenging his state conviction. See 28 U.S.C. § 2254(b)(1)(A). To exhaust state remedies, the petitioner must "fairly present[]" every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review. Castille v. Peoples, 489 U.S. 346, 351 (1989) (emphasis omitted). Thus, to properly exhaust a claim, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999); see also Pope v. Rich, 358 F.3d 852, 854 (11th Cir. 2004) (noting "that Boerckel applies to the state collateral review process as well as the direct appeal process.").

In addressing exhaustion, the United States Supreme Court explained:

> Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights.'" Duncan v. Henry, 513 U.S. 364, 365, 115 S. Ct. 887, 130 L.Ed.2d 865 (1995) (per curiam) (quoting Picard v. Connor, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L.Ed.2d 438 (1971)). To provide the State with the necessary "opportunity," the prisoner must "fairly present" his claim in each appropriate state court (including a state supreme court with

> powers of discretionary review), thereby alerting that court to the federal nature of the claim. <u>Duncan</u>, <u>supra</u>, at 365-366, 115 S. Ct. 887; <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L.Ed.2d 1 (1999).

<u>Baldwin v. Reese</u>, 541 U.S. 27, 29 (2004).

A state prisoner's failure to properly exhaust available state remedies results in a procedural default, which raises a potential bar to federal habeas review. The United States Supreme Court has explained the doctrine of procedural default as follows:

> Federal habeas courts reviewing the constitutionality of a state prisoner's conviction and sentence are guided by rules designed to ensure that state-court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism. These rules include the doctrine of procedural default, under which a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule. <u>See</u>, <u>e.g.</u>, <u>Coleman</u>,[3] <u>supra</u>, at 747–748, 111 S. Ct. 2546; <u>Sykes</u>,[4] <u>supra</u>, at 84–85, 97 S. Ct. 2497. A state court's invocation of a procedural rule to deny a prisoner's claims precludes federal review of the claims if, among other requisites, the state procedural rule is a nonfederal ground adequate to support the judgment and the rule is firmly established and consistently followed. <u>See</u>, <u>e.g.</u>, <u>Walker v. Martin</u>, 562 U.S. —, —, 131 S. Ct. 1120, 1127–1128, 179 L.Ed.2d 62 (2011); <u>Beard v. Kindler</u>, 558 U.S. —, —, 130 S. Ct. 612, 617–618, 175 L.Ed.2d 417 (2009). The doctrine barring procedurally defaulted claims from being heard is not without exceptions. A prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from

---

[3]   <u>Coleman v. Thompson</u>, 501 U.S. 722 (1991).

[4]   <u>Wainwright v. Sykes</u>, 433 U.S. 72 (1977).

a violation of federal law. See Coleman, 501 U.S., at 750, 111 S. Ct. 2546.

Martinez v. Ryan, 566 U.S. 1, 9-10 (2012). Thus, procedural defaults may be excused under certain circumstances. Notwithstanding that a claim has been procedurally defaulted, a federal court may still consider the claim if a state habeas petitioner can show either (1) cause for and actual prejudice from the default; or (2) a fundamental miscarriage of justice. Ward v. Hall, 592 F.3d 1144, 1157 (11th Cir. 2010). For a petitioner to establish cause and prejudice,

> the procedural default "must result from some objective factor external to the defense that prevented [him] from raising the claim and which cannot be fairly attributable to his own conduct." McCoy v. Newsome, 953 F.2d 1252, 1258 (11th Cir. 1992) (quoting Carrier, 477 U.S. at 488, 106 S. Ct. 2639).[5] Under the prejudice prong, [a petitioner] must show that "the errors at trial actually and substantially disadvantaged his defense so that he was denied fundamental fairness." Id. at 1261 (quoting Carrier, 477 U.S. at 494, 106 S. Ct. 2639).

Wright v. Hopper, 169 F.3d 695, 706 (11th Cir. 1999).

In the absence of a showing of cause and prejudice, a petitioner may receive consideration on the merits of a procedurally defaulted claim if the petitioner can establish that a fundamental miscarriage of justice – that is, the incarceration of one who is actually innocent – otherwise would result. The Eleventh Circuit has explained:

> [I]f a petitioner cannot show cause and prejudice, there remains yet another avenue for him to receive consideration on the merits of his

---

[5]     Murray v. Carrier, 477 U.S. 478 (1986).

procedurally defaulted claim. "[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." <u>Carrier</u>, 477 U.S. at 496, 106 S. Ct. at 2649. "This exception is exceedingly narrow in scope," however, and requires proof of actual innocence, not just legal innocence. <u>Johnson v. Alabama</u>, 256 F.3d 1156, 1171 (11th Cir. 2001).

<u>Ward</u>, 592 F.3d at 1157. "To meet this standard, a petitioner must 'show that it is more likely than not that no reasonable juror would have convicted him' of the underlying offense." <u>Johnson v. Alabama</u>, 256 F.3d 1156, 1171 (11th Cir. 2001) (quoting <u>Schlup v. Delo</u>, 513 U.S. 298, 327 (1995)). Additionally, "'[t]o be credible,' a claim of actual innocence must be based on reliable evidence not presented at trial." <u>Calderon v. Thompson</u>, 523 U.S. 538, 559 (1998) (quoting <u>Schlup</u>, 513 U.S. at 324). With the rarity of such evidence, in most cases, allegations of actual innocence are summarily rejected. <u>Schlup</u>, 513 U.S. at 324.

## C. Ineffective Assistance of Counsel

"The Sixth Amendment guarantees criminal defendants effective assistance of counsel. That right is denied when a defense counsel's performance falls below an objective standard of reasonableness and thereby prejudices the defense." <u>Yarborough v. Gentry</u>, 540 U.S. 1, 5 (2003) (per curiam) (citing <u>Wiggins v. Smith</u>, 539 U.S. 510, 521 (2003), and <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984)). To establish ineffective assistance, a person must show that: (1) counsel's performance was outside the wide range of

reasonable, professional assistance; and (2) counsel's deficient performance prejudiced the challenger in that there is a reasonable probability the outcome of the proceeding would have been different absent counsel's deficient performance. Strickland, 466 U.S. at 687.

There is no "iron-clad rule requiring a court to tackle one prong of the Strickland test before the other." Ward v. Hall, 592 F.3d 1144, 1163 (11th Cir. 2010). Since both prongs of the two-part Strickland test must be satisfied to show a Sixth Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." Id. (citing Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000)). As stated in Strickland: "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." 466 U.S. at 697.

"The question is not whether a federal court believes the state court's determination under the Strickland standard was incorrect but whether that determination was unreasonable – a substantially higher threshold." Knowles v. Mirzayance, 556 U.S. 111, 123 (2009) (quotation marks omitted). If there is "any reasonable argument that counsel satisfied Strickland's deferential standard," then a federal court may not disturb a state-court decision denying the claim. Richter, 562 U.S. at 105. As such, "[s]urmounting Strickland's high bar is never an easy task." Padilla v. Kentucky, 559 U.S. 356, 371 (2010).

"Reviewing courts apply a 'strong presumption' that counsel's representation was 'within the wide range of reasonable professional assistance.'" <u>Daniel v. Comm'r, Ala. Dep't of Corr.</u>, 822 F.3d 1248, 1262 (11th Cir. 2016) (quoting <u>Strickland</u>, 466 U.S. at 689). "When this presumption is combined with § 2254(d), the result is double deference to the state court ruling on counsel's performance." <u>Id.</u> (citing <u>Richter</u>, 562 U.S. at 105); <u>see</u> <u>also</u> <u>Evans v. Sec'y, Dep't of Corr.</u>, 703 F.3d 1316, 1333-35 (11th Cir. 2013) (en banc) (Jordan, J., concurring); <u>Rutherford v. Crosby</u>, 385 F.3d 1300, 1309 (11th Cir. 2004).

## IV.   Petitioner's Claims and Analysis

### A. Grounds One and Two

Petitioner claims that the ineffective assistance of trial counsel caused him to plead guilty unknowingly to conspiracy to traffic cocaine. In Ground One, Petitioner claims that counsel failed to obtain all discovery, and failed to advise Petitioner of the relation between the facts and the law. (Doc. 1 at 5, 18-23).[6] "Petitioner contends that counsel failed to make an attempt to inform him of all proper elements and information stemming from the said offense." (<u>Id.</u> at 5). Petitioner claims that "this can clearly be seen from Petitioner's case being

---

[6]     Petitioner entered guilty pleas in three different cases, but he does not specify which case he is referring to in Ground One. However, Petitioner's 20-year prison sentence was based on the conviction for conspiracy to traffic cocaine in Case Number 12-1635, which is the case number identified on the first page of his Petition. (Doc. 1 at 1). It is also the only case in which he filed a Rule 3.850 motion. (<u>See</u> Resp. Ex. F at 53 n.1). Thus, the Court presumes Petitioner is referring to his guilty plea to conspiracy to traffic cocaine.

finalized within 45 days." (Id.). He alleges that counsel met with him only once "for the initial briefing of the case," and "coerced Petitioner into taking the first plea offer the State Attorney presented." (Id. at 18). According to Petitioner, counsel's failure to properly advise him left him confused about his plea options, the terms of the plea bargain, and the elements of the charge. (Id. at 18-21). Petitioner also claims that the plea colloquy did not comply with Rule 11 of the Federal Rules of Criminal Procedure.

In Ground Two, Petitioner claims that trial counsel gave ineffective assistance by causing Petitioner to misunderstand the potential penalties under his plea agreement. (Doc. 1 at 7, 24-26). Petitioner alleges that when he signed "the original plea agreement form … it stated that Petitioner would serve no more than 15 years incarceration if he would accept the offer that was given to him at that point of time." (Id. at 24). Petitioner asserts that when he signed the cooperation plea agreement, his counsel and the State led him to believe "that even if he could not perform his duties, the plea form was still declaratory." (Id.). Once in the courtroom for the plea colloquy, Petitioner alleges that the judge "deviated" from the negotiated plea agreement, and that during an off-the-record discussion, Petitioner's counsel advised him to agree to the altered terms. (See id.). Petitioner also argues that the trial court failed to inquire whether he understood "the length of sentence that was discussed in the actual plea agreement," or whether any promises were made to induce

12

Petitioner to plead guilty, outside what was stated in the original plea form. (Id. at 25). In sum, Petitioner claims he "did not have proper advice as to the correct penalty, because of the two different agreements, 'one from a written plea form and another from Judge Norton made in open court.'" (Id. at 26).

Petitioner raised similar claims in grounds one and two of his Amended Rule 3.850 Motion. (Resp. Ex. F at 38-39, 40-41). In its order denying Rule 3.850 relief, the trial court recounted the relevant facts:

> On September 18, 2012, Defendant was sentenced to a term of incarceration of twenty (20) years, with fifteen (15) years imposed under the mandatory minimum imprisonment provisions of … § 893.135(1)(b)1c, Florida Statutes, for the crime of Conspiracy to Traffic in a Controlled Substance. [Exhibit "A"] Specifically, as charged in the Information, Defendant conspired with others to possess more than 400 grams of cocaine. [Exhibit "B"]

> Defendant entered a plea of guilty to the charged offense pursuant to a sealed written plea and cooperation agreement with the State of Florida that outlined the amount of cooperation and assistance Defendant would need to provide in order to receive a more lenient sentence. It was understood that Defendant would be released from jail to work as an informant with law enforcement.

> Although this Court was unable to find the unsealed written plea agreement on the docket or in possession of the Clerk of the Circuit Court, provisions of the agreement relevant to this motion were stated on the record by the trial court and the prosecuting attorney at the time Defendant entered his pleas of guilty. [Exhibit "C" at 14-17, 19] Defendant acknowledged his understanding of the agreement, and specifically acknowledged that should he be arrested for a new criminal law violation, the State would not waive the mandatory minimum sentencing provisions, and he would receive a sentence between fifteen (15) and thirty (30) years in the Florida State Prison. He also acknowledged that the State need

only prove a violation of the agreement by a preponderance of the evidence.

Defendant was on probation for Armed Possession of Cocaine, Case Number 2011-CF-000743, at the time he entered the plea of guilty in the instant case. He also entered an admission to violating probation. He was sentenced to a concurrent term of incarceration of fifteen (15) years on the probation violation.

After Defendant was released to work with law enforcement, he purchased, as an agent of law enforcement, crack cocaine from a third party on May 7, 2012. After the purchase, he was captured on video breaking off several pieces of the crack cocaine. On May 10, 2012, he was arrested and subsequently charged with Tampering with Evidence. [Exhibit "D"] He entered a plea of guilty to Tampering with Evidence in Case Number 2012-CF-004761. [Exhibit "E" at 5]

This conduct was a violation of his plea agreement and subjected him, in accordance with the plea agreement, to a sentence between 15 and 30 years, and the imposition of a mandatory minimum sentence pursuant to Fla. Stat. § 893.135(1)(b)1c.

(Resp. Ex. F at 52-54). Turning to the current claims, the trial court explained:

1. **DEFENDANT WAS CONFUSED AT THE TIME OF ENTERING HIS PLEA BECAUSE HIS ATTORNEY DID NOT SUFFICIENTLY INVESTIGATE OR SHARE WITH HIM HIS "DISCOVERY."** The entire and thorough plea colloquy refutes any claims that Defendant was confused at the time of entering his plea. [See Exhibit "C"] Furthermore, the Defendant's personal letter to the trial court [Judge Norton] establishes that he was fully aware of his guilt. [See Exhibit "P"][7]

2. **DEFENDANT WAS LED TO BELIEVE THAT HE WOULD BE SENTENCED TO A TERM OF INCARCERATION**

_____

[7]      In this letter, Petitioner admitted wrongdoing, apologized for his mistakes, and recognized the need for punishment, but told Judge Norton that drug-use had affected his judgment and asked the judge for leniency. (Id. at 184-85).

> **BETWEEN 8 AND 15 YEARS.** The Defendant was clearly told, and clearly acknowledged, that his sentence would be between 15 and 30 years [with a mandatory minimum sentence of 15 years] if he was arrested for a new criminal law violation. [See Exhibit "C" at 14-17, 19] The Defendant violated the agreement by committing the crime of Tampering with Evidence. He entered a plea of guilty to this offense and was sentenced to a term of five (5) years in prison in Case Number 2012-CF-004761.

(Id. at 54-55).

Petitioner appealed the denial of post-conviction relief to the First DCA. However, the First DCA dismissed the appeal, evidently because Petitioner failed to file a timely notice of appeal. Webster, 229 So. 3d 1227; (Resp. Exs. G, H). See also Shaw v. EPI Townsend, LLC, 107 So. 3d 558 (Fla. 1st DCA 2013) (appellant's failure to file a timely notice of appeal required the DCA to dismiss the appeal for lack of jurisdiction). Respondent fails to mention that the First DCA dismissed the appeal for lack of jurisdiction, but instead concedes that Grounds One and Two were properly exhausted and addresses them on the merits. (Doc. 15 at 12, 19). For purposes of this Order, the Court assumes that Petitioner's claims are exhausted and otherwise cognizable on federal habeas review. Nevertheless, applying de novo review, they are without merit.[8]

---

[8]    It is unclear whether AEDPA deference applies to the trial court's decision under the unique circumstances here, where the trial court issued a reasoned decision on the merits, the last state court to issue a decision (the First DCA) did so on state procedural grounds, but the respondent fails to raise that procedural defense and addresses the merits. See Edwards v. Harrington, No. ED CV–10–00968–VBF (VBK), 2011 WL 4434539, at *9–10 & n.5 (C.D. Cal. July 20, 2011) (describing the same dilemma with respect to claims decided on the merits by a lower state court but that were unexhausted). In an abundance of caution, the Court reviews the claims de novo,

Petitioner argues that the trial court's ruling was based on an unreasonable determination of the facts. (Doc. 1 at 22-23). However, even upon de novo review, the Court concludes that Grounds One and Two lack merit based on the state-court record, including Petitioner's sworn statements during the change-of-plea colloquy.

The Supreme Court has held that "[b]efore deciding whether to plead guilty, a defendant is entitled to the effective assistance of competent counsel." Padilla v. Kentucky, 559 U.S. 356, 364 (2010) (quotation marks omitted). Thus, "[t]he Supreme Court has long recognized that Strickland's two-part inquiry applies to ineffective assistance of counsel arising out of the plea process." Osley v. United States, 751 F.3d 1214, 1222 (11th Cir. 2014) (citing Hill v. Lockhart, 474 U.S. 52, 57 (1985)). As with any ineffective assistance claim, a petitioner must demonstrate that counsel's performance was deficient and that, but for counsel's deficient performance, there is a reasonable probability the result of the proceeding would have been different. Hill, 474 U.S. at 57 (citing Strickland, 466 U.S. at 687-88, 694). Where a petitioner claims that counsel's misadvice caused him to plead guilty, demonstrating prejudice means "show[ing] that

---

but nevertheless finds that they lack merit. See Berghuis v. Thompkins, 560 U.S. 370, 390 (2010) ("Courts can, however, deny writs of habeas corpus under § 2254 by engaging in de novo review when it is unclear whether AEDPA deference applies, because a habeas petitioner will not be entitled to a writ of habeas corpus if his or her claim is rejected on de novo review."). The Court also considers, and rejects, the remaining grounds upon de novo review of the merits.

there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Id. at 59.

The Supreme Court has said that "[s]olemn declarations in open court carry a strong presumption of verity," and as such, there is a strong presumption that statements made during a plea colloquy are true. Blackledge v. Allison, 431 U.S. 63, 74 (1977). A prisoner often "has everything to gain and nothing to lose from filing a collateral attack upon his guilty plea." Id. at 71-72. Therefore, to preserve the advantages of plea bargaining, "the representations of the defendant, his lawyer, and the prosecutor at [a plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings." Id. at 73-74. A prisoner who has made statements at a plea colloquy "'bears a heavy burden to show his statements were false.'" Winthrop-Redin v. United States, 767 F.3d 1210, 1217 (11th Cir. 2014) (quoting United States v. Rogers, 848 F.2d 166, 168 (11th Cir. 1988)). "The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." Blackledge, 431 U.S. at 74. The Supreme Court has cautioned that "[c]ourts should not upset a plea solely because of post hoc assertions from a defendant about how he would have pleaded but for his attorney's deficiencies. Judges should instead look to contemporaneous

17

evidence to substantiate a defendant's expressed preferences." <u>Lee v. United States</u>, 137 S. Ct. 1958, 1967 (2017).

The transcript of the change-of-plea colloquy refutes Petitioner's allegations that he pleaded guilty unknowingly. (Resp. Ex. A at 186-213). During the plea hearing before Judge Norton on March 30, 2012, Petitioner admitted to violating probation in Case Number 11-743 and pleaded guilty to conspiracy to traffic cocaine in Case Number 12-1635 "pursuant to a negotiated sentence." (<u>Id.</u> at 192). First, Petitioner affirmed under oath that, having discussed the matter with his counsel, he knowingly and freely admitted to a violation of probation (which was based on the conspiracy to traffic cocaine). (<u>Id.</u> at 192-96).

Next, the court took Petitioner's guilty plea for conspiracy to traffic cocaine. The information charged:

> IAN CHAD WEBSTER on February 15, 2012, in the County of Duval and the State of Florida, did agree, conspire, combine or confederate with Karen Perla and Jandy Cruz, to knowingly sell, purchase, manufacture, deliver, bring into the State, or to be knowingly in actual or constructive possession of 400 grams or more but less than 150 kilograms of Cocaine, contrary to the provisions of Sections 893.135(5) and 777.04(3), Florida Statutes.

(<u>Id.</u> at 66). Trial counsel stipulated, in Petitioner's presence, that there was a factual basis for the guilty plea. (<u>Id.</u> at 193). The court inquired whether Petitioner understood the plea agreement, the nature of the charge, and the rights he waived by pleading guilty:

18

THE COURT:     … At this time, sir, I'm holding up a white form, and this white form is exactly 1, 2, 3, 4 – – 6 pages. Did you have an opportunity, sir, to read all six of these pages (indicating)?[9]

DEFENDANT:     Uh-huh (affirmative).

THE COURT:     And, sir, is that your initials I'm looking at (indicating)?

DEFENDANT:     Yes, ma'am.

THE COURT:     All right. After reading this, did you discuss it with your lawyer?

DEFENDANT:     Yes, ma'am.

THE COURT:     And did he explain it to you completely, including any possible defenses you may have, as well as discussing the implications of your plea, sir?

DEFENDANT:     Yes, ma'am.

THE COURT:     Are you fully satisfied with his representation of you?

DEFENDANT:     Yes, ma'am.

THE COURT:     After discussions with your lawyer, did you sign the Plea of Guilty in Negotiated Sentence form, sir?

DEFENDANT:     Yes, ma'am.

THE COURT:     And, sir, is this your signature I'm pointing to (indicating)?

---

[9]    As the trial court noted in its order denying Rule 3.850 relief, an unsealed version of the written plea agreement is not available in the record. (Resp. Ex. F at 53). However, the relevant contents of the agreement were read into the record during the change-of-plea hearing.

DEFENDANT:     Yes, ma'am.

THE COURT:     Sir, do you understand that you have the right to plead not guilty?

DEFENDANT:     Yes, ma'am.

THE COURT:     And, sir, are you pleading guilty today[ ] because you're in fact guilty, or because you believe it to be in your best interest?

DEFENDANT:     I guess, it's in my best interest.

THE COURT:     All right. And do you understand that there will be no trial in this case, sir?

DEFENDANT:     Correct.

THE COURT:     You're also giving up your right to call witnesses, to examine and cross-examine witnesses, as well as the right to remain silent. This means if you're asked about this matter under oath, you must answer fully and truthfully.

                    You're also giving up the right to appeal all matters relating to the judgment, including the issue of guilt or innocence.

                    Do you understand that, sir?

DEFENDANT:     I do.

THE COURT:     And, Mr. Kennedy [the prosecutor], if you would announce what Mr. Webster is pleading to today, and the maximum prison exposure he is facing?

MR. KENNEDY:     Your Honor, he is pleading to the one count Information, which is conspiracy to trafficking in controlled substance.

|  | In this scenario, it's one kilo of cocaine, and this is a first-degree felony, which is punishable by up to 30 years[ ] in the Florida State Prison. |
|---|---|
| THE COURT: | And, Mr. Webster, do you understand the nature of that charge? |
| DEFENDANT: | Yes, ma'am. |
| THE COURT: | Before proceeding further, has your lawyer done everything that you requested? |
| DEFENDANT: | Yes, ma'am. |
| THE COURT: | Is there anything else that you want done in this case, before proceeding further? |
| DEFENDANT: | No, ma'am. |

(Resp. Ex. A at 196-99).

Next, the trial court advised Petitioner that it was "going to go over the sentencing options that [were] under [his] agreement, to make sure [he] completely underst[oo]d them." (Id. at 199). The court advised Petitioner that the following sentencing ranges and contingencies applied:

(1) If Petitioner satisfied the conditions of the agreement and his cooperation led to the filing of at least three prosecutable state narcotics trafficking cases carrying a mandatory minimum sentence of three years or greater, or if his cooperation led to the filing of three or more "acceptable and prosecutable" cases that were <u>not</u> state narcotics trafficking cases, Petitioner's sentencing range would be 5 to 12 years in prison.

(2) If Petitioner's cooperation did not lead to the filing of any prosecutable state narcotics trafficking cases, but Petitioner complied with the terms of the agreement, including by providing "substantial proactive assistance or truthful

testimony," Petitioner's sentencing range would be 8 to 15 years in prison.

(3) If Petitioner violated the terms of the agreement, such as by providing false information, being arrested for a new law violation, or failing to appear for a proceeding, hearing, or interview, his sentencing range would be 15 to 30 years in prison. The State would need to prove a violation of the plea agreement only by a preponderance of the evidence.

(Id. at 199-204) (paraphrased). Petitioner affirmed that he understood each of these terms. Petitioner also affirmed his understanding that the State Attorney had sole discretion to decide whether a case was prosecutable. (Id. at 200).

Finally, the court inquired whether Petitioner's guilty plea was free and voluntary:

| | |
|---|---|
| THE COURT: | Mr. Webster, has anyone threatened or coerced you into entering this plea? |
| DEFENDANT: | No, ma'am. |
| THE COURT: | Has anyone promised you anything[ ] in order to get you to this plea? |
| DEFENDANT: | No, ma'am. |
| THE COURT: | Are you entering this plea freely, willingly, and voluntarily, sir? |
| DEFENDANT: | Yes, I am. |
| THE COURT: | Sir, do you have any questions? |
| DEFENDANT: | No, I don't. |
| THE COURT: | Sir, are you currently under the influence of any drugs, alcohol, or medication? |

DEFENDANT:     No, I'm not.

THE COURT:     I will find there is a factual basis to accept your
               plea, and accept it at this time.

(Resp. Ex. A at 204-05).

The foregoing record shows that Petitioner entered his guilty plea knowingly and freely. Contrary to the allegation in Ground One that Petitioner did not understand how the facts related to the law, Petitioner stated, under oath, that he understood the charge (which was not complex), that he had discussed his plea decision with counsel, and that he knowingly pleaded guilty. Petitioner's counsel stipulated (in Petitioner's presence) that there was a factual basis for the guilty plea. To the extent Petitioner claims that counsel failed to share all discovery with him, or that he felt rushed into pleading guilty, his sworn statements discredit that claim. Petitioner stated that he was satisfied with his counsel's representation (id. at 197) and that there was nothing more he wanted done in the case (id. at 199). Petitioner affirmed that he was not coerced into pleading guilty. (Id. at 204-05). Petitioner also claims he was "confused" about his plea options because of counsel's misadvice. But Petitioner acknowledged, under oath, that he knew he had the right to plead not guilty, that he had the right to a trial, and that he waived that right by pleading guilty. Indeed, at the sentencing hearing, trial counsel explained to the trial court that Petitioner "advised [him] from the start he was not going to fight [the charge],

23

he wasn't going to put the State to its burden of proof. It was clear that he had violated the law." (Resp. Ex. B at 228).

Petitioner claims that the plea colloquy did not comply with Rule 11 of the Federal Rules of Criminal Procedure because the trial court did not advise him of each element of the offense. (Doc. 1 at 20). "The plea colloquy, provided in Rule 11 of the Federal Rules of Criminal Procedure, constitutes the constitutional minimum requirements for a knowing and voluntary plea for federal courts, but that rule is not binding on state courts." Stano v. Dugger, 921 F.2d 1125, 1141 (11th Cir. 1991) (citations omitted). "The defendant does not necessarily need to be told the nature of the offense and elements of the crime at the actual plea proceedings; a knowing and intelligent guilty plea may be entered on the basis of the receipt of this information, generally from defense counsel, before the plea proceedings." Id. at 1142 (citations omitted).

> A reviewing federal court may set aside a state court guilty plea only for failure to satisfy due process: "If a defendant understands the charges against him, understands the consequences of a guilty plea, and voluntarily chooses to plead guilty, without being coerced to do so, the guilty plea ... will be upheld on federal review."

Id. at 1141 (quoting Frank v. Blackburn, 646 F.2d 873, 882 (5th Cir. 1980) (en banc)). As explained above, the record establishes that Petitioner (1) understood the charge against him, (2) understood the consequences of pleading guilty, and (3) pleaded guilty free of coercion, having discussed the matter with his lawyer.

24

The record also refutes Petitioner's claim in Ground Two that, due to counsel's misadvice, he did not understand the potential penalties under the plea agreement, or that the trial court "deviated" from the terms of the agreement. The trial court advised Petitioner that it was "going to go over the sentencing options that are under your agreement, to make sure you completely understand them." (Resp. Ex. A at 199) (emphasis added). As the trial court reviewed those terms, there was no indication that they differed from the terms in the written agreement (which Petitioner confirmed he had reviewed with counsel). Contrary to Petitioner's allegation that he thought the maximum sentence would be 15 years in prison, he affirmed under oath that he understood the maximum penalty to be 30 years in prison, and that if he violated the agreement, such as by getting arrested for a new law violation, the sentencing range would be 15 to 30 years' imprisonment. Petitioner further affirmed that the State would need to prove a violation of the cooperation agreement by a preponderance of the evidence, and that he had discussed the preponderance-of-the-evidence standard with his counsel. And, contrary to his claim that the court failed to inquire whether any promises were made to induce Petitioner to plead guilty, the judge asked Petitioner whether "anyone promised you anything[ ] in order to get you to this plea," to which Petitioner responded, "No, ma'am." (Id. at 205).

After Petitioner entered into the cooperation plea agreement, he was charged with, and pleaded guilty to, tampering with evidence while working as a police informant. (Resp. Ex. A at 84, 127-31; Resp. Ex. B at 216-25). That breach triggered the 15-to-30-year sentencing range under the terms of his agreement. Notably, when the prosecutor explained at the sentencing hearing that Petitioner was subject to a range of 15 to 30 years in prison, Petitioner voiced neither surprise nor objection. (Resp. Ex. B at 226-27, 235). When given the chance to speak, Petitioner acknowledged that he had broken the law and requested a sentence below the mandatory minimum because he had "a very bad drug problem." (Id. at 235). The trial court ultimately sentenced Petitioner to a total term of 20 years in prison. (Id. at 240-41). After the court explained why it imposed that sentence, Petitioner affirmed that he understood why, but that he had hoped for 15 years in prison. (Id. at 244).

Thus, the record contradicts Petitioner's allegations in Grounds One and Two that, because of counsel's misadvice, he did not enter his plea knowingly and voluntarily. Although sworn statements during a plea colloquy are not insurmountable, Petitioner has not carried his burden of overcoming them. Accordingly, relief on Grounds One and Two is denied.

## B. Ground Three

Petitioner claims there "was no factual basis to support the plea of guilt[y] to trafficking in cocaine" because the factual basis did not support each element of the charge. (Doc. 1 at 8, 27-29). In Case Number 12-1635, Petitioner was arrested and charged with conspiracy to traffic cocaine after he and two co-defendants met with a confidential source at a mall to purchase a kilogram of cocaine. Petitioner states that he was arrested before he could purchase the agreed-upon amount of drugs. (Id. at 27). According to Petitioner, "[a] defendant who is convicted of any level of trafficking has to have full possession of the said drugs in order to satisfy all requirements [embedded] in [Statute] Fla. 893.135(5)." (Id. at 8, 27). Thus, according to Petitioner, a defendant may not be convicted of trafficking cocaine where the defendant is arrested before the drugs are released to the defendant's actual possession. (Id. at 27).

Petitioner admits that he "made an attempt to purchase [cocaine] from the confidential informant, but was subsequently arrested before the said drugs could be taken under his full control[ ]." (Id. at 28). As such, he claims he never had possession of the drugs because the transaction was never consummated. (Id.). Petitioner claims he should have been convicted of <u>attempted</u> trafficking instead. (Id. at 28-29) (citing <u>Sherwood v. State</u>, 734 So. 2d 1050 (Fla. 1st DCA

1998)).[10] Petitioner further claims that he would not have pleaded guilty had counsel advised him that the factual basis was inadequate to establish each element of the offense. (<u>Id.</u> at 29).

Petitioner raised a similar claim in ground three of his Amended Rule 3.850 Motion. (Resp. Ex. F at 42-43). The trial court denied the claim, writing:

> 3. **<u>DEFENDANT CLAIMS THERE WAS NO FACTUAL BASIS TO SUPPORT HIS PLEA.</u>** This is not a cognizable claim under Rule 3.850 because it could, and should, have been raised on direct appeal. However, the record supports the existence of a factual basis for the plea. [Exhibit "Q"] This claim is untimely.

(<u>Id.</u> at 55). "Exhibit Q," which the trial court attached to its order, is the arrest report for conspiracy to traffic cocaine. (<u>Id.</u> at 187-89). It states:

> On 02-15-12, a narcotics investigation was conducted at 10300 Southside Blvd (Avenues Mall)[.] Suspect [Petitioner] was introduced to the confidential source by co-defendants 1 & 2. The suspect took possession of the kilogram of cocaine and tested it in front of the co-defendants. The suspect and co-defendants were together when the $31,500 was delivered to the confidential source for the purchase of the cocaine.

> When the suspect was taken into custody he was forced to the ground where he chipped his front tooth. The suspect refused rescue at the scene.

> The suspect was transported to the narcotics office where he was interviewed by Detectives Maynard and Bennett.

---

[10]   In addition to <u>Sherwood</u>, Petitioner cites a number of state decisions in Ground Three of his Petition. However, none of these cases involved defendants who were charged with and convicted of conspiracy.

Post <u>Miranda</u> the suspect gave a full confession and written statement about his involvement in the purchase of the kilogram of cocaine.

The suspect was booked into the [Pretrial Detention Facility].

(<u>Id.</u> at 188).

Petitioner appealed the denial of post-conviction relief to the First DCA. However, the First DCA dismissed the appeal because Petitioner did not file a timely notice of appeal. <u>Webster</u>, 229 So. 3d 1227; (Resp. Exs. G, H). Respondent fails to mention this procedural default, but instead concedes that the claim was properly exhausted. (Doc. 15 at 23).[11] For purposes of this Order, the Court assumes that the claim is exhausted but concludes it is without merit.

"[D]ue process does not require a state court to find a factual basis for a guilty plea unaccompanied by a claim of innocence." <u>Massey v. Warden</u>, 733 F. App'x 980, 990 n.6 (11th Cir. 2018) (citing <u>Wallace v. Turner</u>, 695 F.2d 545, 548 (11th Cir. 1983)). Petitioner does not claim innocence, nor could he plausibly do so. Petitioner admitted wrongdoing in his letter to Judge Norton (Resp. Ex. F at 184-85), at his sentencing (Resp. Ex. B at 235), and in the instant Petition, where he admits he attempted to buy cocaine from a confidential source (Doc. 1

---

[11]     Despite this concession, Respondent may have preserved a procedural default defense when it observed that the trial court denied the claim as not cognizable under Rule 3.850 because it could, and should, have been raised on direct appeal. (Doc. 15 at 24); <u>see also</u> <u>Kimbrough v. Sec'y, Fla. Dep't of Corr.</u>, 809 F. App'x 684, 690-91 (11th Cir. 2020). However, regardless of whether the claim is procedurally defaulted, the Court finds that it fails on the merits.

at 28-29). Petitioner's claim that the factual basis was inadequate centers on the fact that he never took possession of the cocaine. But as shown below, that is irrelevant to whether he was guilty of <u>conspiracy</u> to traffic cocaine.

Petitioner was charged with, and pleaded guilty to, conspiracy to traffic cocaine, in violation of Florida Statutes Section 893.135(5). (Resp. Ex. A at 66, 132-37). A person commits the offense of trafficking cocaine if he "knowingly sells, purchases, manufactures, delivers, or brings into this state, or … is knowingly in actual or constructive possession of, 28 grams or more of cocaine, as described in s. 893.03(2)(a)4., or of any mixture containing cocaine, but less than 150 kilograms of cocaine or any such mixture." <u>Id.</u>, § 893.135(1)(b) (2012). If the amount of cocaine is 400 grams or more, but less than 150 kilograms, the crime is punishable by a mandatory minimum of 15 years in prison. <u>Id.</u>, § 893.135(1)(b)1.c (2012). The statute provides that "[a]ny person who agrees, conspires, combines, or confederates with another person to commit any act prohibited by subsection (1) commits a felony of the first degree and is punishable as if he or she had actually committed such prohibited act." <u>Id.</u>, § 893.135(5) (2012). "The crime of conspiracy consists of an express or implied agreement between two or more persons to commit a criminal offense. Both an agreement and an intention to commit an offense are necessary elements of the crime." <u>George v. State</u>, 208 So. 3d 838, 839 (Fla. 5th DCA 2017) (citation omitted).

The record shows that a factual basis supported Petitioner's guilty plea. A defendant who pleads guilty admits the facts alleged by the State. See Vernold v. State, 376 So. 2d 1166, 1167 (Fla. 1979). The information charged that on February 15, 2012, in Duval County, Florida, Petitioner "did agree, conspire, combine or confederate with Karen Perla and Jandy Cruz, to knowingly sell, purchase, manufacture, deliver, bring into the State, or to be knowingly in actual or constructive possession of 400 grams or more but less than 150 kilograms of Cocaine." (Resp. Ex. A at 66). The arrest report, which the trial court appended to its order denying Rule 3.850 relief, furnished further factual support for the guilty plea. See Hall v. State, 603 So. 2d 650, 650-51 (Fla. 1st DCA 1992) (on remand, instructing post-conviction court to attach the arrest report on which it relied to find a factual basis for the defendant's guilty plea). The arrest report detailed how Petitioner and two co-defendants met a confidential source at the Avenues Mall to purchase one kilogram of cocaine. (Resp. Ex. F at 188). Petitioner sampled some of the cocaine at the meeting and, along with his co-conspirators, delivered $31,500 to the confidential source. Indeed, Petitioner's counsel stipulated that a factual basis supported the guilty plea. (Resp. Ex. A at 193).

Petitioner's argument that the factual basis fell short because he never took possession of the cocaine is unavailing. Petitioner pleaded guilty to conspiracy to traffic cocaine, not trafficking cocaine itself. "Conspiracy is a

separate and distinct crime from the offense which is the object of the conspiracy." George, 208 So. 3d at 839. Thus, "a punishable conspiracy may exist whether or not the crime intended to be accomplished by it was committed." King v. State, 104 So. 2d 730, 732 (Fla. 1957). The information and arrest report each support the existence of "an express or implied agreement between two or more persons" to traffic more than 400 grams of cocaine, coupled with an intent to commit the offense. George, 208 So. 3d at 839.

Thus, the factual basis was sufficient. To the extent Petitioner claims counsel was ineffective for stipulating that a factual basis existed, that claim lacks merit as well. Accordingly, relief on Ground Three is denied.

## C. Ground Four

Petitioner claims that his plea agreement was illegitimate because its terms violated Florida law, rendering its benefits illusory. (See Doc. 1 at 10, 30-33). Specifically, Petitioner contends that the plea agreement's substantial assistance provisions did not comply with Florida Statutes Section 893.135. The statute contains a subsection on substantial assistance that provides:

> The state attorney may move the sentencing court to reduce or suspend the sentence of any person who is convicted of a violation of this section and who provides substantial assistance in the identification, arrest, or conviction of any of that person's accomplices, accessories, coconspirators, or principals or of any other person engaged in trafficking in controlled substances. The arresting agency shall be given an opportunity to be heard in aggravation or mitigation in reference to any such motion. Upon

> good cause shown, the motion may be filed and heard in camera. The judge hearing the motion may reduce or suspend the sentence if the judge finds that the defendant rendered such substantial assistance.

Fla. Stat. § 893.135(4) (2012). Petitioner contends that his plea agreement violated § 893.135(4) because it authorized him to be sentenced below the 15-year mandatory minimum if he provided substantial assistance regarding crimes other than the February 2012 trafficking offense for which he was charged.[12] Thus, he contends, the plea bargain was void because the substantial assistance benefits were unlawful and illusory. Petitioner also claims that counsel gave ineffective assistance by allowing him to enter the plea agreement.

Petitioner raised a similar claim in ground four of his Amended Rule 3.850 Motion. (Resp. Ex. F at 44-45). The trial court denied the claim as procedurally barred, untimely, and meritless.

4. **THE PLEA AGREEMENT WAS UNLAWFUL OR "NOT LEGITIMATE" BECAUSE IT REQUIRED HIM TO SET UP NEW CASES BY WORKING AS AN INFORMANT FOR LAW ENFORCEMENT:** This, too, is not a cognizable claim under Rule 3.850 because it could, and should, have been raised on direct appeal. The Court also finds this claim to be untimely.

Defendant purchased a trafficking quantity of cocaine from a confidential source. He was immediately arrested and gave police a complete confession. Trial counsel wisely viewed the case as one in which Defendant needed to cooperate, which Defendant agreed to do, to avoid a fifteen (15) year minimum

---

[12]     Petitioner references § 893.135(3), but it appears he intended to reference § 893.135(4). The substantial assistance provision used to be located in subsection (3), but at least since 1987 it has been located under subsection (4).

mandatory sentence. However, on the first case involving his cooperation, Defendant attempted to take crack cocaine (evidence) in violation of his plea agreement.

(Resp. Ex. F at 55-56).

Petitioner appealed the denial of post-conviction relief to the First DCA. However, the First DCA dismissed the appeal because Petitioner did not file a timely notice of appeal. <u>Webster</u>, 229 So. 3d 1227; (Resp. Exs. G, H). Respondent fails to mention this procedural default, but instead concedes that the claim was properly exhausted. (Doc. 15 at 27).[13] For purposes of this Order, the Court assumes that the claim is exhausted but concludes it is without merit.

The Supreme Court has held that "when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." <u>Santobello v. New York</u>, 404 U.S. 257, 262 (1971). If a plea agreement makes illusory promises, "it would fail from the outset due to a lack of valid consideration." <u>United States v. Hunter</u>, 835 F.3d 1320, 1326 (11th Cir. 2016).[14]

---

[13]    Respondent may have preserved a procedural default defense when it observed that the trial court denied the claim because it could have been raised on direct appeal. (Doc. 15 at 28); <u>see also</u> <u>Kimbrough</u>, 809 F. App'x at 690-91. Whether or not the claim is defaulted, the Court finds that it fails on the merits.

[14]    To the extent Petitioner claims his plea agreement or resulting sentence violated Florida law, "federal habeas corpus relief does not lie for errors of state law." <u>Swarthout v. Cooke</u>, 562 U.S. 216, 219 (2011) (internal quotation marks and citations omitted).

Under the cooperation plea agreement, Petitioner faced three sentencing ranges, depending on his level of cooperation and assistance. (Resp. Ex. A at 199-204). First, if Petitioner's efforts led to the filing of three or more prosecutable state narcotics trafficking cases carrying a mandatory minimum sentence of three years or greater, or if it led to the filing of three or more "acceptable and prosecutable" cases that were not state narcotics trafficking cases, Petitioner's sentencing range would be 5 to 12 years in prison. Second, if Petitioner's cooperation did not lead to the filing of any prosecutable state narcotics trafficking cases, but Petitioner complied with the terms of the agreement, including by providing "substantial proactive assistance or truthful testimony," the sentencing range would be 8 to 15 years in prison. Third, if Petitioner violated the terms of the agreement, such as by providing false information or being arrested for a new law violation, his sentencing range would be 15 to 30 years in prison.

Contrary to Petitioner's allegations, his plea agreement did not violate Section 893.135(4) by promising to reward Petitioner for cooperating against someone other than his co-defendants in the February 2012 trafficking offense. The statute authorizes a sentence reduction if a defendant "provides substantial assistance in the identification, arrest, or conviction of any of that person's accomplices, accessories, coconspirators, or principals or of any other person engaged in trafficking in controlled substances." Fla. Stat. § 893.135(4) (2012)

35

(emphasis added). Thus, Florida law "recognizes that a defendant convicted of a violation of section 893.135 may benefit via a general reduction of sentence for assistance relating to matters outside of the particular drug charge against him," provided that the requirements of § 893.135(4) are met. <u>Soto v. State</u>, 515 So. 2d 249, 250 (Fla. 5th DCA 1987).[15] To the extent the plea agreement authorized a below-mandatory-minimum sentence if Petitioner gave substantial assistance in other drug-trafficking cases, the agreement was consistent with § 893.135(4).

And, the type of assistance Petitioner attempted to provide fell within the scope of § 893.135(4) and the plea agreement. Petitioner attempted to provide assistance in a narcotics-trafficking case when he made a controlled purchase of crack cocaine from a suspect. (<u>See</u> Resp. Ex. A at 78; Resp. Ex. B at 217). Unfortunately, on his first attempt to cooperate, Petitioner was caught on video taking several pieces of the cocaine he had just purchased, which led to his conviction for tampering with evidence. (Resp. Ex. B at 217). Petitioner failed

---

[15]     Petitioner relies on <u>Campbell v. State</u>, 453 So. 2d 525 (Fla. 5th DCA 1984), which the Fifth DCA decided three years before <u>Soto</u>. In <u>Campbell</u>, the court ruled that § 893.135 did not permit a sentence reduction where a defendant provided substantial assistance in a drug-trafficking case unrelated to his own charge, and therefore allowed the defendant to withdraw from his plea agreement. <u>Id.</u> at 526. However, the version of § 893.135 in effect when <u>Campbell</u> was decided was different. It only authorized a sentence reduction if the defendant cooperated against "his accomplices, accessories, coconspirators, or principals." Fla. Stat. § 893.135(3) (1983). Later versions of the statute authorized a sentence reduction if the defendant cooperated, in the alternative, against "any other person engaged in trafficking in controlled substances." Fla. Stat. § 893.135(4) (1987).

to reap the benefits of the cooperation agreement not because it violated Florida law, but because Petitioner violated the agreement.

Contrary to Petitioner's claims, the plea agreement was consistent with § 893.135(4), at least as the agreement was applied to Petitioner. As the trial court noted, "[t]rial counsel wisely viewed the case as one in which Defendant needed to cooperate." (Resp. Ex. F at 55). Petitioner had reportedly given a full confession to conspiring to traffic cocaine (id. at 188), and the plea agreement gave Petitioner the opportunity to escape a 15-year mandatory minimum (see Resp. Ex. B at 228-29 (counsel discussing the benefits of the cooperation deal)). Unfortunately, Petitioner violated the agreement. Because the plea agreement was lawful, and because counsel was not ineffective in negotiating the agreement, relief on Ground Four is denied.

### D. Ground Five

Petitioner claims that the trial court and trial counsel erred by failing to advise him he could seek withdrawal of his guilty plea to conspiracy-to-traffic cocaine. (Doc. 1 at 34-37). Petitioner claims that counsel gave ineffective assistance by not moving to withdraw Petitioner's plea "when it was determined that he would not [receive] the [sentence] that Petitioner believed he would obtain for pleading guilty to the said offense." (Id. at 34). Petitioner claims that "[o]nce it was decided that the Petitioner would not receive the 8-15 year

37

sentence promised by his counsel and the State Attorney, it was an affirmative duty to permit the Petitioner an opportunity to withdraw his plea and then leave it up to the judge to accept the motion or deny it." (Id.).

Petitioner raised a similar claim in ground five of his Amended Rule 3.850 Motion. (Resp. Ex. F at 56). The trial court denied the claim, explaining:

> **5.** **TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO INFORM DEFENDANT THAT HE COULD WITHDRAW HIS PLEA WHEN GUIDELINE SENTENCE RANGE WAS FOR A LONGER SENTENCE THAN CONTEMPLATED AT TIME PLEA OF GUILTY WAS ENTERED.** The guideline range in the instant case was of little significance to the sentencing in the instant case because Defendant violated the plea agreement and was facing a minimum sentence of fifteen (15) years. It should also be noted that Defendant committed a new crime between the time he entered the plea and was sentenced which would account for an increase in his guideline score. This claim is untimely filed.

(Id.).

Petitioner appealed the denial of Rule 3.850 relief, but the First DCA dismissed the appeal because Petitioner failed to file a timely notice of appeal. Webster, 229 So. 3d 1227; (Resp. Exs. G, H). Respondent fails to mention this procedural default, but instead concedes that the claim was properly exhausted and addresses it on the merits. (Doc. 15 at 30). For purposes of this Order, the Court assumes that the claim is exhausted.

Nevertheless, the claim is due to be denied because it is without merit. As Respondent points out, to withdraw a guilty plea before sentencing, "the

defendant has the burden to show good and sufficient cause to support the withdrawal." (Doc. 15 at 34 (citing Gunn v. State, 841 So. 2d 629, 630 (Fla. 2d DCA 2003); Fla. R. Crim. P. 3.170(f)). "In order to show cause why the plea should be withdrawn, mere allegations are not enough; the defense must offer proof that the plea was not voluntarily and intelligently entered." Robinson v. State, 761 So. 2d 269, 274 (Fla. 1999) (citations omitted). As discussed regarding Grounds One and Two, the record establishes that Petitioner knowingly and voluntarily pleaded guilty to conspiracy to traffic cocaine under the cooperation plea agreement. When he accepted the plea agreement, Petitioner acknowledged that if he violated its conditions, he would be subject to a sentencing range of 15 to 30 years in prison. Petitioner subsequently violated the agreement by tampering with evidence, an offense he also admitted at his sentencing hearing. (Resp. Ex. B at 216-25). That violation triggered the sentencing range of 15 to 30 years in prison. Petitioner's allegation that he thought he would still be subject to a reduced sentencing range of 8 to 15 years, despite violating his plea agreement and tampering with evidence, is incredible. Indeed, Petitioner expressed no desire to withdraw from his guilty plea at the sentencing hearing, even after hearing the applicable sentencing range.

Assuming, arguendo, that counsel and the trial court failed to advise Petitioner that he could seek withdrawal of his guilty plea under Fla. R. Crim. P. 3.170(f), Petitioner has not shown prejudice. Even if Petitioner had moved to

withdraw his guilty plea, Petitioner could not have shown that his plea was entered unknowingly or involuntarily. Thus, Petitioner has failed to establish a reasonable probability that, but for counsel's omission, the outcome of the proceeding would have been different. <u>Strickland</u>, 466 U.S. at 694. As such, relief on this ground is denied.

### E. Ground Six

Next, Petitioner claims that the trial court erred when he was sentenced by a different judge (the Honorable James Daniel) from the one who took his guilty plea and "was familiar with the case" (the Honorable Virginia Norton). (Doc. 1 at 38-41). Without explanation, Judge Norton recused herself before Petitioner's sentencing (Resp. Ex. A at 125-26), which Petitioner claims left him "in the blind about his course of options," denied him due process, and subjected him to a harsher sentence (Doc. 1 at 38). Petitioner suggests that the change of judges prejudiced him because Judge Daniel imposed a different sentence than Judge Norton would have. (<u>See</u> <u>id.</u> at 39-40). Petitioner alleges that Judge Daniel did not have all the information necessary to impose sentence, but he does not describe what information Judge Daniel was lacking. (<u>Id.</u> at 40). Petitioner also argues that counsel should have objected to Judge Norton's recusal. (<u>Id.</u> at 40-41).

Petitioner raised a similar claim in ground six of his Amended Rule 3.850 Motion. (Resp. Ex. F at 48-49). The trial court denied the claim, explaining:

> **6. TRIAL COUNSEL WAS INEFFECTIVE FOR ALLOWING JUDGE NORTON (ORIGINAL TRIAL JUDGE) TO RECUSE FROM THE CASE WITHOUT PROPERLY INFORMING THE DEFENDANT OF THE JUSTIFICATION FOR THE RECUSAL.** There was no requirement that Judge Norton explain to Defendant or Defendant's counsel the reasons for her decision to enter an order of disqualification. Therefore, trial counsel could not be ineffective for failing to inform Defendant of Judge Norton's reasons for disqualification. The claim is also untimely filed.

(Id. at 56). Petitioner appealed the denial of Rule 3.850 relief to the First DCA, which dismissed the appeal because of Petitioner's failure to file a timely notice of appeal. Webster, 229 So. 3d 1227; (Resp. Exs. G, H). However, Respondent concedes that this claim is exhausted and does not assert procedural default. (Doc. 15 at 36). Assuming that the claim is properly before the Court, it is due to be denied because it is without merit.

Petitioner fails to point to any clearly established rule or law that requires a trial judge to explain the reasons for his or her recusal, or that a due process violation occurs when a defendant is sentenced by a different judge from the one who presided over his change of plea. Moreover, Petitioner's argument that he was prejudiced because Judge Daniel imposed a harsher sentence than Judge Norton would have imposed is purely speculative. Petitioner has no way of knowing how Judge Norton would have sentenced him. And, although the 20-

year sentence that Judge Daniel imposed was greater than the 15-year mandatory minimum, it was also less than the 23-to-30-year sentence that the State sought. (See Resp. Ex. B at 237-38). To the extent Petitioner argues that the sentencing judge was not familiar with the case, the sentencing transcript shows that Judge Daniel was well-informed about the facts of the case, the procedural history, and Petitioner's personal circumstances. (See id. at 216-45).

Had trial counsel objected to Judge Daniel sentencing Petitioner instead of Judge Norton, the claim would have been meritless. "A lawyer cannot be deficient for failing to raise a meritless claim." Freeman v. Att'y General, 536 F.3d 1225, 1233 (11th Cir. 2008). As such, relief on Ground Six is denied.

## F. Ground Seven

Finally, Petitioner claims that counsel gave ineffective assistance by failing to investigate the circumstances surrounding the charge of tampering with evidence (which also established that he violated his plea agreement). (Doc. 1 at 42-49). Petitioner alleges that he did not tamper with evidence or violate his cooperation agreement when, while working as an informant, he broke off and took several pieces of crack cocaine acquired in a controlled purchase. Petitioner contends that sampling the cocaine was inherently part of the task. Petitioner claims that had counsel investigated this defense, he would have learned that controlled purchases "require[ ] a buyer to test a small

42

amount before making a purchase, as any law enforcement officer in the Drug Task Force would be able to testify to this known fact." (Id. at 43).

Petitioner failed to raise this claim in state court, either in his original Rule 3.850 Motion or his Amended Rule 3.850 Motion. As a result, Respondent argues that Petitioner failed to exhaust this claim. (Doc. 15 at 38-43). Petitioner acknowledges that he failed to exhaust Ground Seven, but argues he can overcome the default under the standard of Martinez v. Ryan, 132 S. Ct. 1309 (2012). (Doc. 1 at 47-49). In Martinez,

> [t]he U.S. Supreme Court enunciated a narrow exception to the general rule that the lack of an attorney or attorney error in state post-conviction proceedings does not establish cause to excuse the procedural default of a substantive claim. The Supreme Court, however, set strict parameters on the application of this exception. It applies only where (1) state law requires a prisoner to raise ineffective-trial-counsel claims during an initial collateral proceeding and precludes those claims during direct appeal; (2) the prisoner failed to properly raise ineffective-trial-counsel claims during the initial collateral proceeding; (3) the prisoner either did not have counsel or his counsel was ineffective during those initial state collateral proceedings; and (4) failing to excuse the prisoner's procedural default would result in the loss of a "substantial" ineffective-trial-counsel claim. The Supreme Court later extended Martinez's rule to cases where state procedures, as a practical matter, make it "virtually impossible" to actually raise ineffective-trial-counsel claims on direct appeal. Trevino, 569 U.S. at ⸺, 133 S. Ct. at 1918–21.

Lambrix v. Sec'y, Fla. Dep't of Corr., 851 F.3d 1158, 1164 (11th Cir. 2017) (some citations omitted).

43

Petitioner cannot overcome the procedural default because Ground Seven does not present a substantial ineffective assistance claim. Petitioner pleaded guilty to tampering with evidence, and he does not explain how counsel's failure to investigate a spurious defense rendered his plea unknowing or involuntary.

But, even if he could overcome the procedural default, the claim fails on the merits. On September 18, 2012, Petitioner appeared before Judge Daniel to plead guilty to tampering with evidence and to be sentenced in each of his cases. (Resp. Ex. B at 214-45). The prosecutor summarized the history of the case and the factual basis for the evidence-tampering charge:

> MR. KENNEDY: He pled guilty on [March 30, 2012] to the tiered plea agreement [for conspiracy to traffic cocaine] that you just saw, that you just unsealed. The short explanation of what happened here, he was on probation, he was arrested as part of a case of multiple codefendants on the conspiracy to traffick [sic] case. Basically, he was there to purchase a kilo of cocaine from the CI. As per the plea agreement, he was released, he made bond, while he was out working with law enforcement, I believe on his first deal actually, he was caught on video breaking off several pieces of the cocaine that he had just bought as an agent of the police, and taking that cocaine. And that is what the last case – that is [what] the tampering with case evidence basically is, is that him taking the cocaine. He has not pled to that[.] I understand from Mr. Truncale that he's going to plead to the Court. That's a third degree felony, so the State is in agreement that if you want to run that concurrent to the other counts, he'll plead up to that.

(Id. at 217). Petitioner stated that he had no objection to the State's representation of the factual basis. (Id. at 224-25). Petitioner admitted guilt to the charge, and affirmed that he was pleading guilty because he was in fact guilty. (Id. at 222). In addition, Petitioner stated that he was satisfied with the advice and representation of his counsel, with whom he had discussed his decision to plead guilty beforehand. (Id. at 218-19).

In any event, Petitioner's proposed defense – that taking cocaine for himself was necessarily part of the task of engaging in a controlled purchase – is frivolous. Countless sting operations are executed without informants taking contraband for themselves. Moreover, Petitioner's defense rings hollow because according to the factual basis (with which he agreed), he took several pieces of cocaine after he had already paid for it. (Id. at 217, 224-25). And according to the arrest report, Petitioner tried to conceal the pieces of cocaine from law enforcement. (Resp. Ex. A at 78). Thus, under Strickland, trial counsel could reasonably have declined to pursue Petitioner's spurious defense. Because Ground Seven is procedurally defaulted and meritless, relief is denied.

## V.    Conclusion

Accordingly, having reviewed each claim in the Petition de novo, it is hereby **ORDERED:**

1. Petitioner Ian Chad Webster's Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2254 (Doc. 1) is **DENIED** and this case is **DISMISSED WITH PREJUDICE.**

2. The Clerk shall enter judgment accordingly, terminate any pending motions, and close the file.

3. If Petitioner appeals this Order, the Court denies a certificate of appealability (COA). Because the Court has determined that a COA is not warranted, the **Clerk** shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.[16]

**DONE AND ORDERED** at Jacksonville, Florida this 14th day of October, 2020.

TIMOTHY J. CORRIGAN
United States District Judge

---

[16] The Court should issue a COA only if the Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)). After consideration of the record as a whole, the Court will deny a COA.

lc 19

Copies:
Counsel of record
Ian Chad Webster